# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
April 19, 2016 Session

## COMMERCIAL PAINTING COMPANY, INC. v. THE WEITZ COMPANY, LLC, ET AL.

### Appeal from the Chancery Court for Shelby County
### No. CH0615733  Kenny W. Armstrong, Chancellor

_____

### No. W2013-01989-COA-R3-CV – Filed June 20, 2016

_____

A subcontractor and general contractor executed a subcontract for a continuing care retirement community. The subcontractor filed a complaint against the general contractor and asserted claims for breach of contract and misrepresentation. The contractor filed a motion for partial summary judgment with respect to the claims for misrepresentation, which the trial court granted. The breach of contract claims were tried and the trial court awarded the subcontractor some damages, but less than the subcontractor sought. The subcontractor appealed the trial court's judgment granting the contractor's motion for partial summary judgment. We conclude the subcontractor stated claims for intentional or negligent misrepresentation and that the trial court erred in dismissing these claims. We reverse the trial court's judgment granting the contractor's motion for partial summary judgment and remand the case for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Reversed in Part, Vacated in Part, and Remanded

ANDY D. BENNETT, J., delivered the opinion of the court, in which BRANDON O. GIBSON, J., and JOE G. RILEY, S.J., joined.

Scott A. Frick, Memphis, Tennessee, for the appellant, Commercial Painting Company, Inc.

Donald Capparella, Candi Henry, Nashville, Tennessee, and Jeffrey C. Smith, Memphis, Tennessee, for the appellees The Weitz Company, Inc., The Village at Germantown, Inc., BNP Paribas, Deutsche Bank National Trust Company, Anne B. Mathes, Trustee, Federal Insurance Company, and St. Paul Fire & Marine Insurance Co.

# OPINION

## I. PROCEDURAL BACKGROUND

The dispute in this case arises from a construction contract between Commercial Painting Company, Inc. ("Commercial Painting"), a dry-wall subcontractor, and The Weitz Company, LLC ("Weitz"), the general contractor for a continuing care retirement community known as The Village at Germantown, Inc. (the "Project"). Commercial Painting filed a complaint in August 2006 alleging, *inter alia*, claims for breach of contract, unjust enrichment, enforcement of mechanics' and materialmen's liens. Commercial Painting amended its complaint in November 2009 to add claims for intentional/negligent misrepresentation and fraud, rescission/reformation of the contract, and punitive damages.

In October 2010, Weitz filed a motion for partial summary judgment with regard to Commercial Painting's claims for intentional/negligent misrepresentation and fraud, rescission, and punitive damages. The trial court held a hearing and granted Weitz's motion in July 2011. The trial court did not make specific findings of fact or conclusions of law, but it wrote:

> [I]t appears to the Court that there are no genuine issues as to any facts material to the new claims for relief . . . . It further appears to the Court that Commercial Painting Company, Inc. cannot establish all of the essential elements of these claims. Without limitation, the Court finds Commercial Painting Company, Inc. cannot establish it justifiably relied upon any representations with regard to the construction schedules, durations, or sequencing of the construction project at issue here or that it suffered damages as a result of the alleged fraud above and beyond those damages allegedly incurred for breach of contract. As a result, The Weitz Company, LLC's Partial Motion for Summary Judgment is well taken.

The case was tried without a jury in January 2012 over the course of several days. The trial court ultimately determined that Weitz owed Commercial Painting $600,464.26 but that Weitz was entitled to supplementation back charges of $150,000. Both parties appealed, raising several issues, and the Court of Appeals issued an opinion on November 18, 2014. *See Commercial Painting Co., Inc. v. The Weitz Co., LLC*, No. W2013-01989-COA-R3-CV, 2014 WL 6453799 (Tenn. Ct. App. Nov. 18, 2014). The Court of Appeals vacated the trial court's award of partial summary judgment to Weitz and determined that it was not necessary to address the other issues the parties raised on appeal. *Id.* at *9-10. The basis for the Court's decision to vacate the trial court's award was two-fold: (1) the trial court failed to apply the correct summary judgment standard under *Hannan v. Alltel Publishing Company*, 270 S.W.3d 1 (Tenn. 2008), which set forth the appropriate standard to apply at that time, and (2) the trial court failed to comply with

the requirements of Tennessee Rule of Civil Procedure 56.04. *Id*. at *7-8. Weitz filed a petition to rehear, which the Court of Appeals denied by order filed on December 11, 2014.

Weitz filed a Rule 11 application for permission to appeal to the Tennessee Supreme Court. The Supreme Court granted Weitz's petition for the purpose of remanding the case to the Court of Appeals for reconsideration in light of the Court's decision in *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235 (Tenn. 2015), which set forth a standard different than the *Hannan* standard to determine whether a party is entitled to summary judgment. In its order, the Supreme Court wrote:

> The Court of Appeals is directed on remand to consider all of the grounds for partial summary judgment raised by Weitz in the trial court and on appeal. The Court of Appeals is further directed that should it affirm the trial court's grant of partial summary judgment in favor of Weitz on remand, it is then to address the issues raised by the parties with respect to the contract claims.

## II. ANALYSIS

### A. Standard of Review

Whether a party is entitled to summary judgment is a matter of law, which means that we review the trial court's judgment de novo, according the trial court's decision no presumption of correctness. *Martin v. Norfolk S. Ry. Co*., 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). When the Court of Appeals first considered Commercial Painting's appeal of the trial court's grant of partial summary judgment in 2014, the standard for determining whether summary judgment was appropriate was set forth in *Hannan*, 270 S.W.3d at 8-10. The summary judgment standard has changed since that time, however, and now the standard for determining whether a party is entitled to summary judgment in Tennessee is the same as the federal standard. *See Rye*, 477 S.W.3d at 250-65. As the *Rye* Court explained:

> Our overruling of *Hannan* means that in Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which

3

the moving party contends there is no genuine issue for trial." TENN. R. CIV. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] ... supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye*, 477 S.W.3d at 264-65.

In determining whether a party is entitled to summary judgment, we must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Martin*, 271 S.W.3d at 84 (citing *Staples v. CBL & Assocs., Inc*., 15 S.W.3d 83, 89 (Tenn. 2000)). "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Id*. (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Id*. (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

To determine whether Weitz was entitled to partial summary judgment when the trial court granted its motion, we must review Commercial Painting's amended complaint, the statement of material facts Weitz submitted in support of its motion, and Commercial Painting's response. If we determine that summary judgment was improperly granted, the trial court's judgment and damages determination will be vacated to enable the parties to try their case again so that the trial court can take into account the different types and amounts of damages and/or remedies to which Commercial Painting may be entitled if it is able to prove its claims for misrepresentation and fraud.

B. Misrepresentation Claims

To prevail on its claim for intentional misrepresentation, Commercial Painting must prove the following:

4

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

*Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012). Fraud is another name for intentional misrepresentation. *Id.* at 342; *Estate of Lambert v. Fitzgerald*, E2015-00905-COA-R3-CV, 2016 WL 1732721, at \*28 (Tenn. Ct. App. Apr. 28, 2016). As we pointed out in our earlier opinion in this case, proof of intentional misrepresentation may support a claim for rescission of a contract. *Commercial Painting*, 2014 WL 6453799, at \*5 (citing *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991)).

> To prove negligent misrepresentation, Commercial Painting must show:

> (1) that the defendant was acting in the course of its business, profession, or employment, (2) that the defendant supplied false information for the guidance of others in its business transactions, (3) that the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) that the plaintiff justifiably relied on the information.

*Sears v. Gregory*, 146 S.W.3d 610, 621 (Tenn. Ct. App. 2004) (Koch, P.J., M.S., dissenting). Negligent misrepresentation requires justifiable reliance on a material fact made by someone "under a duty to properly inform as to the material facts." *McNeil v. Nofal*, 185 S.W.3d 402, 408 (Tenn. Ct. App. 2005). "'The burden is not upon the defendant to show that it was not negligent, but rather, the burden is upon the plaintiff to show that its reliance upon any statements defendants may have made was reasonable.'" *Id.* (quoting *Williams v. Berube & Assocs.*, 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000)). Thus, Commercial Painting is required to prove that it reasonably relied on a misrepresentation made by Weitz to prevail on its intentional or negligent misrepresentation claims. To prevail on its claim for rescission, Commercial Painting must prove its claims by clear and convincing evidence. *Cato v. Batts*, M2009-02204-COA-R3-CV, 2011 WL 579153, at \*9 (Tenn. Ct. App. Feb. 17, 2011).

### 1. The Amended Complaint

In its amended complaint, Commercial Painting asserted the following pertinent allegations:

13. Commercial Painting commenced its work on the Project. However, during the course of the construction of the Project, Commercial Painting encountered substantial difficulty in completing its work in an efficient and expeditious manner due to non-conforming work performed by other subcontractors under the direction and control of Weitz. In addition, Weitz, as general contractor for the Project, had the responsibility to coordinate, schedule and sequence the work of the various subcontractor trades working on the Project to ensure that the Project was completed in a timely and expeditious manner, and that the work of a subcontractor would not interfere with the efficient and expeditious prosecution of work by other subcontractors.

14. During the course of the Project, Weitz failed to properly coordinate and sequence the work of the subcontractors on the Project, and failed to properly monitor and ensure the correct and timely performance of work by other subcontractors. As a result of the failure by Weitz to properly coordinate, sequence and monitor the quality of work performed by other subcontractors on the Project, Commercial Painting incurred additional expense and costs due to delayed performance and inefficiencies.

. . .

30. Prior to the execution of the Plaintiff's subcontract agreement, Defendant Weitz began negotiating with the Project owner concerning an extension to the contract time for the completion of the Project. More specifically, between the summer of 2004 through November and December 2004, correspondence was exchanged between the Project owner and Defendant Weitz regarding a six month extension to the contract time. . . .

31. On November 17, 2004, Ed Cronan, the Senior Project Manager for the Project, transmitted a letter to the Project Architect outlining delays that the Defendant Weitz contended were due to abnormal inclement weather and bad soil conditions encountered on the Project. In that letter, Mr. Cronan advised the Project Architect that even though the parties had agreed that the Project had been delayed by six months, the actual delay was more on the order of eight and a half months. In his letter, Mr. Cronan stated that one month of the additional delay could be recovered by shortening the preparation time for the interior drawings and delivery of materials. Concerning the other one and a half months' worth of delay, Mr. Cronan stated that "the other one and one half months will have to come from TWC (The Weitz Company) compressing the construction schedule." In addition, Mr. Cronan stated in his letter that in order to make up for

6

some of the delay, that it would be necessary to "[s]upplement trim, paint, drywall, carpet and tile crews among others."

32.     In addition, the November 17, 2004 letter contained a revised construction schedule with a run date of November 18, 2004 which incorporated an additional six month extension on the contract schedule. Further, attached to the letter were documents prepared by Mr. Cronan or other employees of Defendant Weitz reflecting delays and substantiating Mr. Cronan's statement that the delay to the Project was on the order of eight and a half months.

. . .

34.   On December 7, 2004, the Project Architect wrote a response letter to Mr. Cronan criticizing and questioning the validity of the revised Project schedule attached to Mr. Cronan's November 17, 2004 letter.  In addition, the Project Architect expressed specific concerns about the validity of the schedule stating that ". . . it is impossible to determine the time the buildings would be closed in, when drywall finishing would start, and how many buildings would be in the condition to start drywall finishing during the two months of the proposed winter heating."

. . .

36.     The subcontract agreement between Defendant Weitz and Plaintiff was executed by Plaintiff on November 1, 2004, and was executed by Defendant Weitz on December 7, 2004.

37.   The subcontract agreement between Plaintiff and Defendant Weitz had attached to it a schedule that was incorporated as Exhibit E to the Subcontract and had a run date of March 16, 2004.

38.     On December 7, 2004, the date that Defendant Weitz executed the subcontract agreement between Plaintiff and Defendant, Defendant Weitz executed the subcontract knowing that the schedule attached as Exhibit E was outdated by a period of approximately eight months.

39.   Moreover, despite having a revised Project schedule that was updated almost three weeks before the execution of the subcontract agreement . . . , Defendant Weitz nevertheless executed the subcontract agreement with the out-of-date and erroneous schedule issued in March 2004.

. . .

41.     Prior to the execution of the subcontract agreement . . . , no representative of Defendant Weitz informed Plaintiff that the schedule

7

attached as Exhibit E to the subcontract agreement was outdated, or that a revised construction schedule had been prepared approximately three weeks before execution of the subcontract agreement by Defendant Weitz on December 7, 2004.

42. Defendant Weitz represented to Plaintiff that Plaintiff's work on the drywall portion of the Project was to be performed only by Plaintiff prior to the execution of the subcontract agreement . . . even though the Defendant knew, or otherwise intended to supplement subcontractor trades, including Plaintiff's work on the drywall portion of the Project.

. . .

44. On June 2, 2005, Defendant Weitz and the Project owner entered into Amendment No. 2 to the contract between the Project owner and Defendant Weitz that extended various dates for the completion of the Project. Among other deadlines, this amendment extended the completion date[s] . . . . In addition, this agreement provided for an early completion bonus to Defendant Weitz in the amount of $8,597.00 for each day the Project was completed early with a total maximum potential early bonus of $386,865.00.

45. Shortly after execution of Amendment No. 2 to the contract between the Project owner and Defendant Weitz, Defendant Weitz issued a revised construction schedule. However, instead of producing a schedule to provide for completion of the Project by the dates set forth in the amendment between Defendant Weitz and the Project owner, Defendant Weitz produced a schedule that was fraudulent and unrealistic, and was drafted with completion dates designed to allow Weitz to obtain the completion bonus provided for in Amendment No. 2 between Project owner and Defendant Weitz.

. . .

47. [O]n July 20, 2005, the Project Architect transmitted another letter to Mr. Cronan of Defendant Weitz indicating that a review of the construction schedule had been performed by the Project Architect and a representative of the owner, and compared to the status of the construction in place. In that letter, the Project Architect stated that ". . . [b]ased on our experience . . . we have no confidence in the sequences and durations you have established in the schedule and TWC's ability to complete the work according to the schedule. We see incompatible tasks scheduled on top of one another in various areas, missing tasks, and the schedule lacks a true logic or critical path. . . ." The Project Architect concluded the letter by stating "[w]e encourage you to take a serious look at your construction

8

schedule and make an effort to schedule the work to an appropriate finish, rather than backing into an arbitrary date [to capture the forty-five bonus days]. Trying to accomplish the most difficult and quality sensitive work of the Project in the shortest time possible, is not of the best interest of the Project."

48. For the duration of Plaintiff's work on the Project, Defendant Weitz continued to issue construction schedules that were incompatible and contained unrealistic completion dates, and then continued to direct Plaintiff and other subcontractors to adhere to those schedules. All of these actions taken by Defendant Weitz were done for the purpose of monetary gain in the form of an early completion bonus, and at all times pertinent and material hereto, Defendant Weitz continued to schedule and sequence the work in a fraudulent fashion never communicating to Plaintiff and other subcontractors that Defendant Weitz had in fact obtained contractual extensions of the completion dates until very near the end of the Project after it was apparent that Weitz could not obtain the early completion bonus. Moreover, in an effort to capture early completion bonus monies from the owner, Defendant Weitz improperly supplemented the work of Plaintiff, falsely claiming that the Plaintiff was not completing its work according to schedules promulgated by Defendant Weitz and which Defendant Weitz knew created false and improper guidance for completion of the Project. Defendant then relied upon those false statements to falsely, fraudulently and improperly back charge Plaintiff for the supplementation costs.

. . .

80. In connection with the execution of the subcontract agreement . . . , Defendant Weitz fraudulently, intentionally, recklessly, and/or negligently misrepresented material facts regarding the schedule attached as Exhibit E to the subcontract, as well as other information material to Plaintiff's work on the Project regarding the schedule. More specifically, Defendant Weitz misrepresented to Plaintiff that Plaintiff must follow the schedule even though a revised more up-to-date schedule had been prepared by Defendant Weitz approximately three weeks prior to the execution of the subcontract agreement by Defendant Weitz. In addition, even if Weitz had given Plaintiff the revised schedule, Defendant Weitz represented to Plaintiff that the time frame in the schedule was sufficient and must be followed even though they knew that the six month time extension being negotiated with the Project Owner was insufficient to complete the Project in a normal and reasonably anticipated manner in the construction industry. Further, Defendant Weitz represented to Plaintiff that the time frame on the schedule was reliable despite the fact that prior to the execution of the

9

subcontract agreement on December 7, 2004, the actual delay in the completion of the Project was more on the order of eight and a half months. Further, Defendant made these misrepresentations to Plaintiff knowing that it had intentions, approximately three weeks before execution of the subcontract by Defendant, to "compress the construction schedule" and to supplement the work of various subcontractors, including the drywall work to be performed by Plaintiff.

81.    Defendant Weitz represented to Plaintiff that the time frames it negotiated with Plaintiff as part of the subcontract were reasonable even though after execution of the subcontract Defendant Weitz had in fact negotiated later completion dates for the construction of the Project. Defendant developed fraudulent, unrealistic and unachievable schedules for the sole purpose of monetary gain, namely, the early completion bonus . . . . Defendant Weitz represented to Plaintiff that it should follow the schedules knowing it was impossible for Plaintiff to complete the work in compliance with those schedules, and Defendant Weitz did so knowing it intended to supplement Plaintiff's work forces before execution on the subcontract. Defendant made these representations for the sole purpose of monetary gain by Defendant under the bonus agreement with the Project Owner.  Plaintiff relied on these representations to its detriment.

82.    Defendant Weitz had a duty to disclose to Plaintiff all material facts pertaining to the subcontract, including the schedule attached to the subcontract, as well as other information pertaining to completion dates materially affecting a correct view of the subcontract, but negligently or intentionally failed to do so.

83.    Information available to Defendant Weitz regarding the true status of the Project, the out-of-date schedule attached to the subcontract as Exhibit E, the additional amount of time needed to complete the Project, Defendant's prior intentions to supplement Plaintiff's work forces, as well as other information, were material facts that Defendant Weitz had a duty to communicate to Plaintiff before execution of the subcontract.  However, instead of communicating the facts as Defendant Weitz knew them, Defendant Weitz provided Plaintiff with false and misleading information about these matters upon which Plaintiff relied and upon which Defendant knew or should have known Plaintiff would rely.

. . .

88.    In the alternative, Plaintiff avers that Defendant made material misrepresentations and created false impressions, which Defendant knew or should have known that Plaintiff would rely, regarding the Project schedule and extensions to the contract time; regarding its intentions to supplement

10

Plaintiff's work forces prior to the execution of the subcontract agreement . . . ; regarding Defendant's intentional promulgation of construction schedules which the Defendant knew or should have known were fraudulent, unrealistic and unachievable; regarding Defendant's intentional and improper sequencing of the work of Plaintiff and other subcontractors in order to meet an early bonus completion date for the sole purpose of monetary gain; and regarding Defendant's supplementation of Plaintiff's work for the purpose of making up delays in the Project schedule not caused by the Plaintiff while falsely alleging that said supplementation was due to a breach of contract by Plaintiff . . . . Such conduct by Defendant constitutes intentional, reckless and/or negligent misrepresentations and fraudulent conduct by Defendant Weitz for which Defendant Weitz is liable to Plaintiff.

### 2. Commercial Painting's Reliance

The basis for Weitz's argument that it was entitled to summary judgment with respect to Commercial Painting's misrepresentation claims was that Commercial Painting presented no evidence showing that it relied on Weitz's alleged misrepresentations to its detriment. In its response to Weitz's motion, Commercial Painting pointed out that on June 2, 2005, Weitz and the Project Owner entered into an agreement titled "Amendment No. 2 to Agreement Between Owner and Construction Manager" which provided Weitz a six-month extension for different phases of the Project. Section 5.6 of the subcontract between Weitz and Commercial Painting required Weitz to pass on to Commercial Painting the full amount of the six-month contract extension that Weitz obtained from the Project owner.[1] In a letter to its subcontractors dated June 28, 2005, Weitz attached a revised schedule and stated that it had obtained an extension of "4+ months," not the six months that it had, in fact, obtained earlier that month. Weitz also made the following representation in the letter:

> A key point for everyone to realize is, that none of the durations for any activity in the revised schedule, has been changed from the original schedule.

According to Commercial Painting, Weitz used the revised June 28, 2005, schedule along with a subsequent schedule dated December 2005 as a basis for wrongfully

---

[1] Paragraph 5.6 is titled Adjustments to Subcontract Time and provides, in pertinent part:

> Subcontractor shall be entitled to an extension of the Subcontract Time and/or reimbursement for delay damages only to the extent that the Contractor actually receives an extension of time and/or reimbursement for delay damages under the Prime Contract for events pertaining to the Subcontractor's Work. . . .

11

supplementing Commercial Painting's workforce on the Project and as a basis to withhold payments from Commercial Painting.

Commercial Painting submitted an affidavit by its president, Mark Koch, in support of its opposition to Weitz's motion for partial summary judgment. In his affidavit, Mr. Koch made the following statements under oath:

- Commercial Painting submitted its bid for [subcontractor work at The Village of Germantown] for the first time in 2003, and later had meetings with representatives of Weitz in the late summer of 2004. During these initial meetings, representatives of Weitz did not disclose to Commercial Painting that Weitz already decided to supplement Commercial Painting's forces prior to entering into any subcontract with Commercial Painting, and have a portion of the work which would ultimately become a part of Commercial Painting's scope of work performed by another contractor with the cost of that supplementation deducted from Commercial Painting's bargained for compensation. In addition, no representative of Weitz during any of these meetings disclosed to Commercial Painting that Weitz did not intend to pass down all time extensions received from the Project Owner as it was required to do pursuant to Section 5.6 of the Subcontract that was ultimately executed between Weitz and Commercial Painting, nor did Weitz disclose to representatives of Commercial Painting during these meetings that Weitz intended to compress the overall schedule performance requirements set forth in the original schedule that was attached to the Subcontract. Weitz also did not disclose to Commercial Painting that it intended to revise the Schedule after the execution of the Subcontract in such a manner so as to make the work required to Commercial Painting to be more expensive and difficult to perform than what is reasonably expected, including problems with Commercial Painting's completed work being damaged by other subcontractors, work being sequenced in such a manner as to require an unusual amount of mobilizations and demobilizations, and overall poor management of the construction of the Project to such an extent that the conduct of Weitz materially interfered with the construction of the Project on a daily basis.

- Weitz did not disclose prior to executing the Subcontract with Commercial Painting that Weitz, in order to make up for delays in the Project caused by Weitz or other conditions beyond the control of Commercial Painting, intended to supplement Commercial Painting's forces on the Project, that Weitz intended to materially

12

alter Commercial Painting's performance expectations through the use of construction schedules containing materially false information, namely that the true completion dates for various phases of the Project did not include time extensions granted by the Project Owner, which Weitz was contractually obligated to pass on to all subcontractors on the Project, including Commercial Painting.

- Had Weitz advised Commercial Painting before submitting its bid that Weitz intended to supplement and accelerate Commercial Painting's work on the Project in order to make up for construction delays that were not the responsibility of Commercial Painting as is disclosed in Ed Cronan's letter of November 17, 2004, or that Weitz intended to breach its contractual obligation set forth in the proposed Subcontract that was ultimately executed by Weitz and Commercial Painting, to pass on any and all time extensions received from the Project Owner to Commercial Painting, Commercial Painting would not have submitted its bid on the Project nor executed the Subcontract.

Commercial Painting retained as an expert David Pearson, the president of a construction management firm, to analyze some of the schedules and other issues related to the Project. In addition to the Koch affidavit, Commercial Painting submitted an affidavit by Mr. Pearson in support of its opposition to Weitz's motion for partial summary judgment. In his affidavit, Mr. Pearson summarized a two-volume report that he prepared dated July 1, 2011, which was filed with the trial court before the trial court ruled on Weitz's motion for partial summary judgment motion. Mr. Pearson testified to the following statements in his affidavit:

- Weitz attempted to achieve early completion by wrongfully compressing the durations for CPC's [Commercial Painting's] remaining work and failing to pass through to CPC the time extension granted to Weitz by the Owner.

- Weitz did not advise CPC that it had obtained from the Owner a 6-month time extension until December 2, 2005, after it was apparent that Weitz could not achieve the early completion bonus. Weitz did not properly extend CPC's Subcontract schedule.

- Weitz wrongfully compressed the durations for CPC's work by overlapping CPC's drywall activities in a fashion far different than in CPC's Subcontract schedule, which was never properly revised.

13

- On November 17, 2004, Weitz wrote the Project architect advising them that Weitz would reduce an 8 ½-month delay that had accrued to that point to 6 months by compressing the construction schedule by, among other things, "supplementing the drywall crews." About 5 months later, when Weitz was even further behind schedule, Weitz created its May 4, 2005 early completion bonus schedule indicating that Weitz planned to attempt to complete the Project just 4 months late. Weitz never alleged that CPC is responsible for any of the delays that occurred prior to May 4, 2005. . . . [L]ess than two weeks after preparing the May 4, 2005 early completion bonus schedule, Weitz alleged that CPC was responsible for delays, supplemented CPC's crews with crews from other trade contractors and later, wrongly deducted the $414,501 cost of supplementing CPC's crews from payments to CPC.

- By supplementing CPC's forces to meet a schedule that it was not contractually obligated to follow, and to make up delays in the Project that were not the responsibility of CPC, Weitz ultimately did what it stated would be done in Weitz's November 14, 2005 letter to the Project Architect — namely that Weitz would reduce an 8 ½-month delay that had accrued to that point to 6 months by compressing the construction schedule by, among other things, "supplementing the drywall crews."

- In [the] letter [from Weitz to Commercial Painting dated June 28, 2005], Weitz stated that it was issuing the schedule in accordance with CPC's Subcontract Agreement, Exhibit D, Section 6.4 Schedule. Weitz stated that the schedule reflected an extension of the contract time by 4+ months. Weitz did not reference the section of CPC's subcontract relating to time extensions – Section 5.6 Adjustments of Subcontract Time. Weitz wrote this letter after it had in hand the formal fully executed June 2, 2005, Amendment #2 from the Owner that granted a 6-month time extension to Weitz and an early completion bonus, not a 4+ month time extension with no bonus provision as stated in Weitz' cover letter.

- While th[e] statement [Weitz made in its letter dated June 28, 2005, that none of the durations for any activity in the revised schedule has been changed from the original schedule] is "technically accurate," it is very misleading. It is misleading because, while it is true that Weitz did not change any of CPC's individual activity durations, Weitz significantly compressed the duration for CPC's work by overlapping activities to a far greater extent than shown in CPC's

14

Subcontract schedule. Further, as of June 28, 2005, the Project was actually about nine months behind schedule, or five more than the 4+ months represented to CPC by Weitz in this letter.

Weitz contends Commercial Painting did not rely on the schedules it attached to the parties' subcontract or that it attached to the letter dated June 28, 2005. For example, one of Weitz's statements of material fact was:

Commercial Painting represented to Weitz that it could meet Weitz' "project schedule demands."

Commercial Painting admitted this statement in part and denied it in part. Commercial Painting's response to this statement included the following:

Commercial Painting was not aware at any time either before or after the Subcontract was executed that Weitz intended to publish Schedules that contained false information, and Commercial Painting never agreed or represented that it would comply with Schedules that had been materially altered from the Schedule attached to its Subcontract by compressing the time required for Commercial Painting to perform its overall scope of work, or that contained scheduling deadlines that did not include any extensions of the contract time received from the Contract Owner.

Another statement of material fact that Weitz included in support of its motion for partial summary judgment was:

Commercial Painting believed the plans sent by Weitz were only 85% complete construction plans and that the Project was on a "fast track," with changes to be made to the Project as construction progressed.

Commercial Painting again admitted this statement in part and denied it in part. Commercial Painting responded further:

"Fast track" projects are not uncommon in the construction industry. However, fast-track projects do not include projects in which the general contractor develops and publishes construction schedules based upon misrepresented project completion dates, nor do legitimate fast track projects include a subcontractor's work being compressed and accelerated, without compensation, in order to meet misrepresented project deadlines or due to mismanagement and improper sequencing of the work by the general contractor.

Commercial Painting asserts that a claim for misrepresentation can be based either on the making of a false statement or the creation of a false impression about a material fact. As the Court of Appeals has explained,

15

When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. *Rose v. Foutch*, 4 Tenn. App. 495 (1926). The representation must have been made with knowledge of its falsity and with a fraudulent intent. *Shwab v. Walters*, 147 Tenn. 638, 251 S.W. 42 (1922); *Vela v. Beard*, 442 S.W.2d 644 (1968). The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that representation to his injury. *Whitson v. Gray*, 40 Tenn. 441 (1859); *Dozier v. Hawthorne Development Co.*, 262 S.W.2d 705 (1953).

*Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 232 (Tenn. Ct. App. 1976) (quoted with approval by *Rogers v. Stafford*, 03A01-9410-CH-00372, 1995 WL 103680, at *2 (Tenn. Ct. App. Mar. 13, 1995)).

Mr. Koch stated in his affidavit that Commercial Painting was unaware that Weitz intended to supplement and compress its work on the Project, and Commercial Painting reasonably relied on the overall performance duration set forth in the initial schedule attached to the subcontract. He asserts that when Weitz later modified the schedules, it did not disclose to Commercial Painting that it had altered the performance durations in the May and June 2005 schedules or that it was doing this by failing to pass down to the subcontractors, including Commercial Painting, the six-month extension Weitz had received from the Project owner. Mr. Koch explained that if Weitz had advised Commercial Painting before Commercial Painting submitted its bid that it intended to supplement and accelerate Commercial Painting's work on the Project to make up for construction delays that were not Commercial Painting's fault or that Weitz intended to breach its contractual obligation to pass on all time extensions it received from the Project Owner to Commercial Painting, Commercial Painting would not have submitted a bid or executed the Subcontract.

Weitz argues that Commercial Painting fails to make out a claim for misrepresentation because it did not rely on the construction schedules Weitz attached to the subcontract. However, as Commercial Painting points out, it relied on the overall performance duration set forth in the initial schedule and reasonably anticipated that it would have the opportunity to perform the entire project without having its work accelerated and supplemented by others due to a compression in the overall schedule that Weitz intended to impose before it even executed the subcontract in December 2004.

Another argument Weitz makes is that the letter dated November 17, 2004, that Commercial Painting describes in paragraph 31 of its amended complaint, quoted above, was not sent to Commercial Painting and that Commercial Painting, therefore, cannot rely on it for its misrepresentation claims. However, Commercial Painting relies on this letter, not to show a misrepresentation, but to show the date by which Weitz made the

16

plan to compress the construction schedule and the date by which Weitz made the decision to supplement the work for which Commercial Painting was bidding and that became the subject matter of the subcontract. It is not necessary that Commercial Painting be a party to the letter for it to rely on the letter to prove knowledge by Weitz of its contents and to prove an element of its intentional or negligent misrepresentation claims.

With regard to its supplementation of Commercial Painting's work, Weitz contends the subcontract permitted it to do this. Weitz points to section 11.1 of the parties' subcontract, which is titled "Subcontractor's Default" and provides, in part:

> If the Subcontractor fails or neglects to carry out the Subcontractor's Work in strict compliance with the Subcontract Documents or is otherwise in default of any of its obligations under the Subcontract Documents, and fails to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after 48 hours following delivery to the Subcontractor of written notice thereof and without prejudice to any other remedy the Contractor may have, (i) supplement the Subcontractor's performance with additional material, supplies, equipment, or labor, pay for same and deduct the amount so paid from any money then or thereafter due Subcontractor . . . .

Although Weitz is correct that it is entitled to supplement Commercial Painting's work if Commercial Painting is in default of its obligations, the subcontract does not entitle Weitz to cause Commercial Painting to be in default by misrepresenting a material fact and then sanctioning Commercial Painting for being in default.

Viewing the evidence Commercial Painting submits in opposition to Weitz's motion for partial summary judgment in the light most favorable to Commercial Painting and drawing all reasonable inferences in favor of Commercial Painting, as we are required to do, and accepting such evidence as true, resolving all doubts in favor of Commercial Painting, *Martin*, 271 S.W.3d at 84, we conclude that the trial court erred in granting Weitz's motion for partial summary judgment. Commercial Painting has shown there is a genuine issue of material fact with regard to each element of its intentional misrepresentation claim and its negligent misrepresentation claim.

With regard to its claim for intentional misrepresentation, Commercial Painting has presented evidence showing that (1) Weitz made a representation of a present or past fact or produced a false impression regarding the length of time Commercial Painting would have to perform its work and regarding the amount of work Commercial Painting would be able to perform in order to mislead Commercial Painting to obtain an undue advantage over it; (2) the representation(s) or impression(s) were false when made; (3) the representation or impression concerned a material fact, the subcontract at issue; (4) Weitz either knew that the representation(s) and/or impression(s) were false or did not

17

believe they was true; (5) Commercial Painting did not know that the representation(s) or impression(s) were false when Weitz made or created them and was justified in relying on the truth of Weitz's representation(s) or impression(s); and (6) Commercial Painting sustained damages as a result of the representation because, *inter alia*, it was not able to recover the fees it reasonably anticipated when the subcontract became effective.

Moreover, Commercial Painting has shown there is a genuine issue of material fact with each element of its negligent misrepresentation claim. Commercial Painting has presented evidence to show (1) that Weitz was acting in the course of its business, profession, or employment when the misrepresentations and/or false impressions were made or created; (2) that Weitz supplied false information or a false impression for the guidance of Commercial Painting in its business transactions, *viz.*, its work on the Project; (3) that Weitz failed to exercise reasonable care in communicating the false information or impression(s); and (4) that Commercial Painting justifiably relied on the information or impression because Commercial Painting had no reason not to believe what Weitz represented to it.

The trial court based its grant of partial summary judgment to Weitz, in part, on its finding that Commercial Painting cannot establish that it "suffered damages as a result of the alleged fraud above and beyond those damages allegedly incurred for breach of contract." Commercial Painting is entitled to just one recovery to the extent damages from more than one cause of action overlap, but it should not be precluded from proceeding on multiple theories of liability if it is able to make out a prima facie case under more than one cause of action. As the Court of Appeals wrote in *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 238 (Tenn. Ct. App. 1998), "Whether the theory of recovery is breach of contract, intentional misrepresentation, or promissory fraud, if the damages claimed under each theory overlap, the Plaintiff is only entitled to one recovery." Commercial Painting is not required to choose between various causes of action just because the damages available may overlap. *See Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 909 (Tenn. 1999) ("If a defendant has been found liable under more than one theory of recovery, no inequity results from allowing the plaintiff to choose one of the claims upon which to realize its maximum recovery of enhanced damages."). If Commercial Painting is successful on its intentional misrepresentation claim against Weitz, it may be entitled to recover punitive damages in addition to compensatory damages. *Concrete Spaces*, 2 S.W.3d at 912; *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 900 (Tenn. 1992); *First Nat'l Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991).

### III. CONCLUSION

For the reasons stated above, we reverse the trial court's award of partial summary judgment to Weitz, vacate the trial court's judgment and award of damages following the trial, and remand the case for further proceedings consistent with this opinion. Costs of

18

this appeal shall be assessed against the appellees, The Weitz Company et al., for which execution shall issue if necessary.

_____

ANDY D. BENNETT, JUDGE